UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **Mirza Baig,** | ) |
| | ) |
|            **Plaintiff,** | ) |
| | ) |
| v. | )   **CIVIL ACTION NO.: 1:21-CV-2246** |
| | ) |
| **Resurgent Capital Services, L.P.,** | ) |
| | ) |
|            **Defendant.** | ) |
| | ) |

# COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

Comes now the Plaintiff, Mirza Baig, by counsel, and hereby file this Complaint Seeking Damages for Violations of the Fair Credit Reporting Act in the above-captioned action and, in support thereof, states as follows:

### Preliminary Statement

1. This is an action for actual, statutory, and punitive damages, costs and attorney fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. (hereinafter referred to as the "FCRA").

### Jurisdiction & Venue

2. The jurisdiction of this Court is conferred by 15 U.S.C. §1681, *et seq*., and 28 U.S.C. §1331 and 15 U.S.C. §1681, *et seq*.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### Parties

4. Mirza Baig (hereinafter "Plaintiff") is an individual who was at all relevant times was residing in the County of Marion in the State of Indiana.

5. At all relevant times herein, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

6. Upon information and belief, Defendant Resurgent Capital Services, L.P. (hereinafter "Resurgent"), is a corporation incorporated under the laws of the State of South Carolina and authorized to do business in the State of Indiana. Defendant conducts business at 55 Beattie Place, Suite 110, Greenville, SC 29601. The registered agent for Defendant is Corporation Service Company. *See Exhibit "1".*

7. Upon information and belief, Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

## Allegations

8. Credit reports, as alleged in this pleading, are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

9. Previously, Plaintiff obtained a credit card debt with Citibank and the credit card accumulated a balance that Plaintiff was unable to pay. Due to unforeseen circumstances, Plaintiff was not able to continue making payments on his Citibank credit card and the debt was charged off.

10. LVNV Funding, LLC, purchased Plaintiff's debt with Citibank. On behalf of LVNV Funding, Defendant attempted to collect the debt at issue in this matter. Defendant is the servicing agent/debt collector for LVNV Funding, LLC, in its attempt to collect the debt at issue in this matter.

11. On or about September 3, 2020, Plaintiff filed a chapter 7 bankruptcy case in the U.S. Bankruptcy Court of the Southern District of Indiana. *See Exhibit "2" attached hereto*.

12. The debt owed to Defendant was listed as an unsecured debt on Schedule F of Plaintiff's chapter 7 bankruptcy case.

13. On September 5, 2020, the Bankruptcy Noticing Center sent the Notice of Bankruptcy regarding Plaintiff's chapter 7 bankruptcy case electronically to Defendant. Specifically, the aforementioned Notice of Bankruptcy was sent to resurgentbknotifications@resurgent.com . *See Exhibit "2" attached hereto*.

14. Upon information and belief, on September 5, 2020, Defendant received the aforementioned Notice of Bankruptcy regarding Plaintiff's chapter 7 bankruptcy case. *See Exhibit "2" attached hereto.*

15. During Plaintiff's bankruptcy case, Plaintiff did not reaffirm the debt to Defendant.

16. On or about December 16, 2020, the U.S. Bankruptcy Court issued the discharge of Plaintiff's debts. This notice was sent electronically to Defendant to an email address known as resurgentbknotifications@resurgent.com. This discharge extinguished Plaintiff's liability to Defendant and it terminated the debtor-creditor relationship between Plaintiff and Defendant. *See Exhibit "3" attached hereto*.

17. Upon information and belief, Defendant received the notice of Plaintiff's discharge. *See Exhibit "3" attached hereto*.

18. Given that Plaintiff's bankruptcy case resulted in a Report of No Distribution (i.e., Plaintiff had no assets in his estate to distribute to any creditors), any unsecured debts that were incurred prior to the filing of Plaintiff's bankruptcy petition are considered discharged, regardless of whether the debt was specifically listed in Plaintiff's schedule of creditors, filed as part of his Bankruptcy Petition. After receiving the discharge of her debts from the U.S. Bankruptcy Court, Plaintiff has not incurred any new debts with Defendant.

19. As of September 5, 2020, Defendant was effectively put on notice that any debt incurred prior to the filing of Plaintiff's bankruptcy case was discharged.

20. After receiving the discharge of his debts from the U.S. Bankruptcy Court, Plaintiff has not applied for any new loans with Defendant.

21. After receiving the discharge of his debts from the U.S. Bankruptcy Court, Plaintiff has not had any personal business relationships with Defendant.

22. Given the facts above, Defendant had no reason to believe that Plaintiff owed a debt to it.

23. On or about January 20, 2021, despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's individual and personal credit file from Experian, Inc. (hereinafter "Experian"), a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f). Experian is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties. *See Exhibit "4" attached hereto.*

24. On August 9, 2021, Plaintiff called Defendant to inquire as to the reason for the inquiry on his Experian credit report. Plaintiff was transferred to the bankruptcy department and the employee with whom Plaintiff discussed this matter stated that the inquiry was from the former Citibank account.

25. Consumer reports contain personal, private, and highly confidential information including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided; (iv) social security number; (v) date of birth; (vi) current telephone number; (vii) previous known telephone number(s); (viii) current employer; (ix) former employer(s); (x) public records; (xi) account histories with all reporting creditors, including, but not limited to, home loans, automobile loans, credit cards, medical debt, and other types of debt; (xii) records of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

26. Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, *inter alia*, limit the furnishing of consumer reports to statutorily enumerated purposes only. *See* TRW, Inc., v. Andrews, 534 U.S. 19, 23 (2001).

27. The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." Syed v. M-I, LLC, et al., 846 F.3d 1034, 1037 (9th Cir. 2017)(citing the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128). *See also*, United States v. Bormes, 568 U.S. 6, 7 (2012)(The Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); Cole v. U.S. Capital, 389 F.3d 719, 723 (7th Cir. 2004)("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintain by consumer reporting agencies.").

28. When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. §1681(a)(4).

29. Tasked with protecting a consumer's privacy, the FCRA governs **who** can access consumer report information from credit reporting agencies and **for what purpose**. To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

30. Defendant is a subscriber and user of consumer reports issued by Experian.

31. Defendant also furnishes data to Experian about its experiences with its customers and potential customers.

32. Defendant is a "furnisher" of information as contemplated by the FCRA, 15 U.S.C. §1681s-2(a) & (b), that regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about its transactions and/or other experiences with consumers.

33. Defendant has a symbiotic relationship with Experian such that it furnishes information to Experian regarding its transactions and/or other experiences with consumers while also purchasing from Experian information about its customers and other consumers.

34. On or about January 20, 2021, despite being cognizant of the facts as delineated above, Defendant procured from Experian a copy of Plaintiff's consumer report at which time, Defendant made a general or specific certification to Experian that Defendant sought the consumer report in connection with a business transaction initiated by Plaintiff, to review an account to determine whether Plaintiff continued to meet the terms of said account, or for some other permissible purpose enumerated by the FCRA. *See Exhibit "4" attached hereto*.

35. The aforementioned certification made by Defendant to Experian was false.

36. Despite certifying to Experian that it had a permissible purpose for procuring Plaintiff's consumer report, Defendant had no such permissible purpose.

37. When Defendant procured Plaintiff's credit report from Experian, Defendant did so without Plaintiff's knowledge or consent.

38. At no time on or prior to January 20, 2021, did Plaintiff consent to Defendant obtaining his consumer reports.

39. After receiving the discharge of his debts from the U.S. Bankruptcy Court, Plaintiff has never given Defendant permission to access his private individual and personal credit reports.

40. Despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's private individual and personal credit reports impermissibly.

41. Despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's private individual and personal credit reports without a legitimate business reason to do so.

42. Despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's private individual and personal credit reports without first informing Plaintiff of its intent to do so.

43. When Defendant accessed Plaintiff's private individual and personal credit reports, Defendant impermissibly obtained information relative to Plaintiff's personal and individual credit accounts.

44. When Defendant accessed Plaintiff's private individual and personal credit reports, Defendant impermissibly obtained information relative to Plaintiff's payment history on his private personal and individual credit accounts.

45. When Defendant accessed Plaintiff's private individual and personal credit reports, Defendant impermissibly obtained information relative to Plaintiff's credit history and credit worthiness.

46. When Defendant accessed Plaintiff's private individual and personal credit reports, Plaintiff's private financial information was published to Defendant.

47. When Defendant accessed Plaintiff's private individual and personal credit reports, unknown employees, representatives and/or agents of Defendant viewed Plaintiff's private financial information.

48. When Defendant accessed Plaintiff's private individual and personal credit reports, Plaintiff's Confidential Information was published to Defendant.

49. Plaintiff has a right to have his Confidential Information kept private.

50. By its actions, when Defendant impermissibly procured from Experian Plaintiff's individual and personal credit reports, Defendant invaded Plaintiff's privacy.

51. By its actions, when Defendant impermissibly procured from Experian Plaintiff's individual and personal credit reports, Defendant effectively intruded upon the seclusion of Plaintiff's private affairs.

52. When Defendant accessed Plaintiff's private individual and personal credit reports, Defendant impermissibly obtained personal information about Plaintiff, such as his current and past addresses, date of birth, employment history, and telephone numbers among other information.

53. When Plaintiff discovered that Defendant had procured his personal, private and confidential information from Experian, Plaintiff was extremely angry, frustrated and suffered emotional distress resulting from Defendant's invasion of privacy.

54. When Plaintiff discovered that Defendant had procured his personal, private and confidential information from Experian, Defendant's actions made Plaintiff believe that he did not have the right to privacy afforded by the FCRA.

55. When Plaintiff discovered that Defendant had procured his Confidential Information from Experian, Plaintiff was concerned about the continued security and privacy of his Confidential Information.

56. When Plaintiff receives his Discharge Order from the U.S. Bankruptcy Court, Plaintiff rightfully believed that his business relationship with Defendant had come to an end. When

Plaintiff discovered that Defendant had procured his Confidential Information after it had been sent notice of Plaintiff's bankruptcy discharge, Plaintiff believes that Defendant would to act with impunity and continue to procure his Confidential Information indefinitely.

57. Defendant's actions cause Plaintiff to suffer anxiety, frustration, and emotional distress which manifested itself such that Plaintiff had difficulty resting.

58. Defendant's conduct, as delineated above, constitutes a violation of 15 U.S.C. §1681b(f)(1).

59. As a direct and proximate result of Defendant's conduct as delineated above, Plaintiff has suffered actual damages in the form of financial and dignitary harm arising from the Defendant's review of her personal information and her credit information and an injury to her credit rating and reputation. Furthermore, Plaintiff will continue to suffer the same harm for an indefinite time in the future all to Plaintiff's great detriment and loss.

60. Plaintiff hereby demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff respectfully requests for judgment in Plaintiff's favor and against Defendant as follows:

An award of actual and statutory damages under the FCRA to Plaintiffs in an amount to be determined at trial;

An award of punitive damages as provided by the FCRA;

An award of the costs for bringing this action and reasonable attorney's fees;

Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ John T. Steinkamp_____
John T. Steinkamp
Attorney for Plaintiff
John Steinkamp & Associates, P.C.
5214 S. East Street, #D-1
Indianapolis, IN  46227
317-780-8300
john@johnsteinkampandassociates.com